**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| Timothy J. Birarelli,<br>        Plaintiff,<br><br>v.<br><br>JOSEPH GRAY, Officer, Massachusetts Environmental Police and Individually; RYAN LENNON, Officer, Massachusetts Environmental Police and Individually; LT. MACGREGOR, Officer, Massachusetts Environmental Police and Individually; MASSACHUSSETTS ENVIRONMENTAL POLICE and EXECUTIVE OFFICE OF ENERGY AND ENVIORNMENTAL AFFAIRS,<br>        Defendants. | CIVIL ACTION NO. |

**COMPLAINT**

This is an action to redress the violation of Plaintiff Timothy J. Birarelli's federal constitutional protections by persons acting under color of state law and by Massachusetts Environmental Police ("MEP") and Executive Office of Energy and Environmental Affairs ("EEA"), which authorized and ratified the actions of the individual Defendants. Pendent claims based on state law are asserted based on the same acts on which the federal constitutional claims rest.

**PARTIES**

1.      The Plaintiff, Timothy J. Birarelli, is a citizen of the United States and resides at 40 Western Ave, Beverly, Massachusetts 01915.

1

2. Defendant Joseph Gray ("Officer Gray) is, and was at all times relevant to this action, an officer employed by the Massachusetts Environmental Police. He is sued individually and in his official capacity.

3. Defendant Ryan Lennon ("Officer Lennon") is, and was at all times relevant to this action, an officer employed by the Massachusetts Environmental Police. He is sued individually and in his official capacity.

4. Defendant Lt. MacGregor ("Lt. Macgregor") is, and was at all times relevant to this action, an officer employed by the Massachusetts Environmental Police. He is sued individually and in his official capacity.

5. Defendant MEP is, an administrative agency established in 1985 under the authority of the laws of the Commonwealth of Massachusetts. It is empowered and obligated to supervise, discipline and control the officers in its employ.

6. Defendant EEA is a State Agency and supervising authority of all of the other Defendants.

## JURISDICTION

7. This action is authorized by 42 U.S.C. § 1983. This Court has jurisdiction of the subject matter of this action by virtue of 28 U.S.C. § 134(3-4). The state claims asserted herein lie within the pendent jurisdiction of this Court under 28 U.S.C. §1367. This Court is authorized by 28 U.S.C. §§ 2201-02 to issue the declaratory judgment sought herein.

## FACTS

8. On or about December 1, 2020, Officer Gray received a complaint that Plaintiff and his brother Thomas Birarelli's ("Thomas") needed law enforcement attention.

9. The complainant allegedly informed Officer Gray that Plaintiff, Thomas and others were taking improperly sized and v-notched lobsters and selling them.

10. Officer Gray reported that he was very familiar with the Birarellis' business as they had been cited by the MEP for multiple lobster violations over the years.

11. Plaintiff and Thomas are in their early twenties and had not received a citation for a lobster violation before the events that gave rise to this action.

12. On December 9, 2020, around noon, Officer Gray and Officer Lennon conducted a surveillance of Birarellis' Wharf located in Beverly, Massachusetts.

13. During their surveillance, Officer Gray and Officer Lennon saw four fishing boats arrive and offload four to six crates each. The crates were weighed, recorded, and stored in a refrigerated storage area at the other side of the Birarellis' Wharf.

14. During their surveillance, Officer Gray and Officer Lennon did not observe any activity that was unusual or out of place for a wharf.

15. Two of the fishing boats, the F/V LEGACY and the F/V SHOOTING STAR were owned by F/V SHOOTING STAR, INC. and operated by Plaintiff and Thomas. The other boats were the F/V DIAMOND JIM, operated by Frank Sholds, and F/V HATTRICK operated by Rob BUDD.

16. After approximately two hours of surveillance, the Officers, reportedly in order to conduct an administrative inspection, approached the Birarellis' Wharf. While Officer Lennon spoke with the Birarellis, Officer Gray walked into the refrigerated storage area.

3

17. Neither Officer Lennon nor Officer Gray had sought out or attained a search warrant for the Birarellis' Wharf.

18. Officer Gray counted 22 lobster crates in the refrigerated storage area and then began measuring lobsters. Officer Gray reported alleges he found multiple violations of lobsters in the first crate.

19. Officer Gray sought help from Officer Lennon in measuring lobsters due to the number of lobsters present. Officer Gray and Officer Lennon called and asked for additional help from Lt. MacGregor.

20. Shortly after, Lt. MacGregor arrived to assist Officer Gray and Officer Lennon (collectively the "EPOs").

21. The EPOs allegedly measured every lobster within the 22 crates, and separated the lobsters that, the EPOs alleged, were in violation of the law from those that were legal.

22. The EPOs took approximately five hours to measure the lobsters at the Birarellis' Wharf.

23. The EPOs reported that 17 of the crates contained illegal lobsters. The EPOs moved the crates of lobsters, reported as illegal, to the loading dock around 7:00 pm.

24. Lt. MacGregor then photographed each crate and its contents, Officer Gray re-measured each lobster again, and Officer Lennon recorded the alleged specific violations Officer Gray reported.

25. Officer Gray reported that there were allegedly one hundred and three [103] illegal lobsters. The EPOs then placed the alleged illegal lobsters into a final crate where they removed the lobsters claw bands and released the lobsters back into the water.

26. The EPOs then seized the remaining legal lobsters. Lt. MacGregor contacted Tessa Brown, the Owner of Cape Ann Lobstermen of Gloucester, and offered to sell the legal lobsters to her. Tessa Brown agreed to buy them at current "boat price."

27. Around 10:00 pm, a refrigerated truck sent by Tessa Brown arrived at the Birarellis' Wharf. The EPOs then used the Birarellis' scale to weigh the legal lobsters and load twenty crates of them into the refrigerated truck where they were taken to Cape Ann Lobstermen in Gloucester.

28. Officer Gray arrived at the Cape Ann Lobstermen in Gloucester on December 10, 2020 around 9:30 am, and observed the seized, legal, lobster crates being re-weighed.

29. Officer Gray reported that the legal lobsters weighed two thousand two hundred and one [2201] pounds and had a net product weight of one thousand eight hundred and sixty-five [1865] pounds.

30. The Cape Ann Lobstermen purchased the legal lobsters from Officer Gray for $5.25 per pound. The Cape Ann Lobstermen wrote Officer Gray a check for $9,791.25, made out to The Commonwealth of Massachusetts.

31. Officer Gray provided the check to MEP Officer Kamb who reportedly transported the check to Robert Wong, MEP Director of Finance. The check was to be deposited in the

Treasury, and for the benefit of, the Commonwealth of Massachusetts upon disposition of the criminal case.

32. On December 21, 2020, Officer Gray filed an application for a criminal complaint against Plaintiff, for possessing allegedly 103 lobsters the EPOs reported as illegal before being released back into the water.

33. On that same day, Officer Gray submitted a libel action for $9,791.25 to the Salem District Court. The libel action was stamped by a court clerk, but it was never docketed, Officer Gray did not maintain the action, and no hearing was ever held. *See Exhibit A attached hereto.*

34. Defendants never served the Plaintiff with the libel action.

35. Salem District Court has no record of that action, yet the libel action was clearly filed with the Court. *See Exhibit A attached hereto.*

36. For some unknown reason, Defendants never went forward with the libel action.

37. After two years of pursuing the criminal complaint against Plaintiff, the MEP and the district attorney dropped all charges against him.

38. There was no probable cause, exigent circumstances, or any other exception to the Constitution of the United States' warrant requirement.

39. The lobsters seized and sold to the Cape Ann Lobstermen of Gloucester were not alleged to be in violation of any laws or regulations governing lobsters.

40. Plaintiff through Counsel wrote to MEP requesting the release of the funds for the sale of the Lobster.

41. To this day Plaintiff has not been reimbursed for the $9,791.25 the EPOs sold his lobsters for.

## FIRST CLAIM

*42 U.S.C. § 1983 – Against All Defendants*

42. Plaintiff incorporates the preceding paragraphs by reference as if fully rewritten herein.

43. At all times relevant to this action, Defendants Joseph Gray, Ryan Lennon, and Lt. MacGregor were acting under color of state law.

44. Defendants Officers Gray, Lennon, and MacGregor unlawfully conducted an unreasonable and warrantless search of Plaintiff's property in violation of the Fourth Amendment to the Constitution of the United States as incorporated and applied to the states by way of the Fourteenth Amendment to the Constitution of the United States.

45. Defendants Officers Gray, Lennon, and MacGregor made an unreasonable and warrantless seizure of Plaintiff's property in violation of the Fourth Amendment to the Constitution of the United States as incorporated and applied to the states by way of the Fourteenth Amendment to the Constitution of the United States.

46. Defendants Officers Gray, Lennon, and MacGregor unlawfully deprived Plaintiff of his private property and submitted the proceeds for public use without due process and just compensation in violation of the Fifth Amendment to the Constitution of the United States as incorporated and applied to the states by way of the Fourteenth Amendment to the Constitution of the United States.

47. Defendants Officers Gray, Lennon, and MacGregor unlawfully deprived Plaintiff of his property without due process of law in violation of the Fourteenth Amendment to the Constitution to the United States.

48. Defendants Officers Gray, Lennon, and MacGregor unlawfully deprived Plaintiff of his private property without due process in violation of the laws of the Commonwealth of Massachusetts.

49. At all times relevant hereto, Defendants Officers Gray, Lennon, and MacGregor acted pursuant to a policy or custom of the Defendants MEP and EEA of conducting criminal investigations and utilizing the guise of an administrative inspection in order to deprive individuals of their Constitutional rights.

50. The Defendants MEP and EEA failed to adopt clear policies and failed to properly train their officers as to their proper authority under the Constitution of the United States and the laws of the Commonwealth of Massachusetts.

51. MEP's and EEA's policy or custom, and their failure to adopt clear policies and failure to properly train their deputies, were a direct and proximate cause of the constitutional deprivations and damages suffered by Plaintiff.

52. Plaintiff made demand of the Defendants for the return of the $9,791.25.

### SECOND CLAIM

*Violation of M.G.L. Chapter 257*

53. Plaintiff hereby incorporates the preceding allegations as if fully rewritten herein.

54. Defendants seized the Plaintiff's catch pursuant to M.G.L. c. 257 §1.

55. Since the Defendants did not go forward with the libel action the Plaintiff is entitled to the proceeds from the sale to be returned to him pursuant to M.G.L. c. 257 §7.

56. The Defendants seizure was groundless and without probable cause, the Plaintiff is entitled to reasonable damages with costs pursuant to M.G.L. c. 257 §9.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for the following relief:

a.      On his first claim, a judgment for compensatory damages in an amount to be

determined at trial, plus reasonable attorney fees pursuant to 42 U.S.C. § 1988,

against all Defendants;

b.      On his second claim, a judgement for compensatory and punitive damages in an

amount to be determined at trial, against Defendants Joseph Gray, Ryan Lennon,

and Lt. MacGregor;

c.      All damages allowed pursuant to M.G.L. c. 257 §§7 and 9;

d.      An award of prejudgment interest and costs against the Defendants;

e.      Any and all other relief this Court may deep appropriate.

**PLAINTIFF REQUESTS A TRIAL BY JURY ON ALL ISSUES SO TRIABLE**

> Respectfully submitted,
> Timothy Birarelli
> By his attorneys,
>
> */s/* David S. Smith
> David S. Smith, Esq. (BBO No. 634865)
> FARRELL SMITH O'CONNELL
> AARSHEIM APRANS LLP
> 27 Congress Street, Suite 109
> Salem, MA 01970
> Tel: 978-744-8918
> dsmith@fsofirm.com

Dated: December 4, 2023